EMILY TALBOT, Appellant, *v.* NEW YORK AND HARLEM RAILROAD COMPANY and Another, Respondents.

*Liability of the city of New York in constructing bridges across railroad tracks —*
*delegation of such right — chapter 702 of 1872.*

The city of New York had the right, under the provisions of chapter 702 of the Laws of 1872, to substitute an over or undercrossing for the dangerous grade railroad crossing which had theretofore existed on Forty-eighth street and Fourth avenue, and in making such change it incurred no liability to a property owner on such street, none of whose lands were taken when the grade crossing was constructed, the grade of the street in front of her lot remaining unchanged, and the street not being entirely closed by the bridge so as to prevent persons and carriages from passing along the same, and entering on the tracks of the railroad.

Where the city provides an overcrossing it has the right to close the grade crossing.

Whatever a city has the right to do in respect to constructing bridges over railroad tracks, substituting the same for grade crossings, it has the right to authorize the railroad corporation owning such tracks to do; and the railroad corporation doing the same is under no greater liability for carrying out the plans of the board of engineers of the city than the city would be had it undertaken the work.

APPEAL by the plaintiff, Emily Talbot, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 13th day of December, 1893, upon the decision of the court rendered after a trial at the New York Special Term dismissing the plaintiff's complaint upon the merits, without costs.

*Aug. S. Hutchins*, for the appellant.

*Henry H. Anderson*, for the respondents.

FOLLETT, J.:

This action was brought to restrain the defendants from maintaining a bridge in Forty-eighth street, spanning their tracks and Fourth avenue, and also from maintaining the approaches and walls appurtenant to said bridge. Forty-eighth street is one of the public streets of the city of New York, laid out in 1837, pursuant to chapter 86 of the Revised Laws of 1813, and the acts amendatory thereof and supplemental thereto. An assessment was levied upon the premises now owned by the plaintiff to aid in defraying the expenses of opening this street. The street is sixty feet wide between house lines, ten feet on each side being used for walks and about forty feet in the center for a carriageway. The fee of this street is in the city. The plaintiff is, and since March 1, 1869, has been, the owner of No. 25 East Forty-eighth street, which is on the north side of the street, and is sixteen feet eight inches wide and one hundred feet five inches deep. This lot is bounded on the south by the north line of Forty-eighth street, and the plaintiff has no title to or interest in the bed of the street, nor any private rights therein except such as are incident to the ownership of a lot abutting on a public street in the city of New York. This lot is 250 feet west of Fourth avenue and 633 feet east of Fifth avenue. The defendants have since about 1875 owned all the land lying between the plaintiff's lot and Fourth avenue. In 1870 the plaintiff erected on her lot a four-story brick house with a brown stone front, which she has ever since occupied as a dwelling. For many years prior to 1869 the tracks of the New York and Harlem Railroad Company had extended north from Forty-second street through and on the surface of Fourth avenue to the Harlem river.

May 14, 1872, chapter 702 of the Laws of that year was passed, which is entitled: "An act to improve and regulate the use of the Fourth avenue in the city of New York." This statute provides:

"SECTION 1. The New York and Harlem Railroad Company is hereby authorized and required to regulate the grade of their railroad in the Fourth avenue of the city of New York, and to construct such viaducts, foot and road bridges over the same, and such

excavations and tunnels under the same, with openings for proper ventilation, for the purpose of rendering the same safe and convenient to any persons crossing the same, and the railroad trains and passengers traveling thereon, in the following manner, namely : At Forty-fifth and Forty-eighth streets, to construct tunnels under the said streets and the Fourth avenue for sidewalks and carriageways underneath the railroad at least thirty-four feet wide, or bridges over the railroad of at least that width, for the same purpose   *   *   * between Forty-fifth and Forty-ninth streets, including said streets, iron railings or brick walls shall be erected in said streets, outside the railroad tracks, so as to prevent crossing at a level with said railroad tracks."

By the 6th section of this law a board of engineers was created, charged with the duty of directing and superintending the construction of the improvement.   The section provided that the board should consist of Allan Campbell and Alfred W. Craven, or their successors, and the chief engineer of the board of public works of the city of New York for the time being, and the engineer of the New York and Harlem Railroad Company.

By the 7th section of the act it was provided that the railroad company and the city of New York should each pay one-half of the expenses of the proposed improvement.

On the 30th of June, 1872, the board of engineers appointed by the act directed the construction of an iron bridge over the tracks of the railroad at Forty-eighth street instead of a tunnel under the tracks, and prescribed the plans and specifications of the bridge to be erected, including the approaches thereto.   During the years 1872 and 1873 this bridge was constructed, pursuant to their plan, was afterwards inspected by the board of engineers and found to have been built in accordance with their specifications, and one-half of the expense was paid by the railroad and one-half by the city. The approach of the westerly end of the bridge begins in the street on a line with the east line of the plaintiff's lot, and ascends upon a grade fixed by the board of engineers until it meets the bridge spanning the avenue.   This bridge is thirty-four feet wide and is on the south side of the street, leaving a space about twenty-six feet wide on the north side of Forty-eighth street, which is unoccupied by it.   For the purpose of preventing teams and persons from pass-

ing over this unoccupied part of the street on to the tracks of the railroad a brick wall, about eight feet high, was extended from the southeast corner of plaintiff's house to the bridge proper. The grade of the street in front of the house was not changed, but the wall above mentioned prevents carriages from being driven exactly in front of the plaintiff's door, and also prevents the plaintiff from using that portion of Forty-eighth street lying east of the wall and west of defendants' tracks.

April 1, 1873, the New York Central Railroad Company leased the road of the New York and Harlem Railroad Company, since which time it has operated the same as lessee. The railroads make no use of this bridge, which is part of Forty-eighth street, and is wholly within the control of the city of New York. The court found that the bridge does not injuriously affect the easements of light, air or access appurtenant to plaintiff's premises, except as it slightly interferes with the approach of a carriage to the front of the house. It is found that the brick wall, extending from the southeast corner of plaintiff's house to the side of the bridge, casts a shadow in the early morning on the front basement room of the plaintiff's house, but that later in the day the reflection from the wall increases rather than diminishes the light in the basement.

The undisputed evidence shows that since the bridge and its approaches were constructed they have been used as part of Forty-eighth street, and that the city paid for paving the approaches and lighted and controlled the entire structure, the defendants making no use of it and exercising no control over it. The city had the right, under the statute referred to, to substitute an over or under-crossing for the dangerous grade crossing which existed at this place in 1872, and for many years prior thereto, and incurred no liability to this plaintiff in making the change. None of her land was taken nor was the grade of the street in front of her lot changed. As before stated, the bridge does not entirely close Forty-eighth street so as to prevent persons and carriages from passing along the north side of the west approach and entering on the tracks of the railroad. The city, having provided an overcrossing, had the right to close the grade crossing, which it did by the wall extending from the southeast corner of the plaintiff's lot to the north side of the west approach. The learned counsel for the plaintiff does not question

the right of the city to close the grade crossing by a proper barrier, but he insists that it should have been built 250 feet east of the plaintiff's lot and on the west side of Fourth avenue, thus leaving a narrow *cul de sac* 250 feet long bounded on the south by the west approach of the bridge, on the east by a wall and on the north by the north line of Forty-eighth street. The defendants own all of the land north of this proposed *cul de sac* and between plaintiff's lot and Fourth avenue, and they consented that this part of the street should be closed, and as against the plaintiff the city had the right to close it at the point where the wall was built. A *cul de sac* of the kind described would have served no useful purpose, would have been difficult to guard, misleading to travelers and a useless source of expense and danger to the city.

Under the act the city had authority to substitute an over or under-crossing for the existing grade crossing, which necessarily carried with it the right of closing the grade crossing as it had previously existed, and in doing this the city was not required to place the barrier on the west side of Fourth avenue, but might place it at such a place in the street as would best subserve the public interests, without liability for damages, so long as the property of abutting owners was not taken or encroached on.

Whatever the city had a right to do in respect to constructing this bridge and its approaches it could authorize these defendants to do, and they are under no greater liability for carrying out the plans of the board of engineers than the city, had it undertaken the work. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98, 108; *Conklin* v. *N. Y., Ont. & Western R. Co.*, 102 id. 107, 112; *Bucholz* v. *N. Y., L. E. & W. R. R. Co.*, 66 Hun, 377.)

The case at bar is quite different from *Reining* v. *N. Y., L. & W. R. Co.* (128 N. Y. 157, affirming 35 N. Y. St. Repr. 731). Reining's premises were on the north side of Water street and on the west side of Commercial street at the northwest corner, formed by the intersection of those streets. The defendant built, in Water street, an embankment twenty-four feet wide and about five feet high, supported on both sides by perpendicular stone walls, and on this embankment laid and operated two railroad tracks. Between Reining's lot and the north wall of the embankment there was a

space of about eight or nine feet in width, which formed the only means of approaching the premises. This use of the street was wholly for the benefit of the railroad, and not at all for the benefit of the street or of citizens living near or on it. It was held that the use of the street was so exclusive as to be unreasonable, and that the plaintiff was entitled to damages.

In the case at bar the change was not wholly for the benefit of the railroad, but was believed to be and clearly was for the benefit of the public as well. The defendants make no use whatever of Forty-eighth street, except to cross it. It is urged that because it appears that the defendants have occupied to some extent the narrow strip of land east of the wall and north of the bridge formerly within the bounds of the street, the plaintiff is entitled to have such use restrained. This action was not brought or tried on that theory. The use of this strip seems to have been by the assent or acquiescence of the city, and such use is not set out in the complaint as a cause of action, and the evidence that any injury to the plaintiff's lot was caused by it is so slight that it is entirely insufficient to justify an injunction restraining the use.

It is very clear that the defendants do not own the bridge, its approaches or the wall, and have no right to remove them, and that a judgment against these defendants commanding them to remove the structure complained of would be unavailing.

Without considering the effect of the Statute of Limitations or the other questions involved, we think the evidence failed to establish a cause of action and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.