In the Matter of the Application of THE GRADE CROSSING COMMISSIONERS OF THE CITY OF BUFFALO, Appellants, for the Appointment of Commissioners to Ascertain the Compensation to be Paid to the Owners of and Parties Interested in Certain Lands which may be Adjudged and Claimed to be Owned by JAMES W. WADSWORTH and Others, Respondents. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Buffalo — grade crossing commissioners — recovery for property damaged but not taken by a change of grade — measure of damages as between an owner and a lessee — costs are discretionary.*

Under the provisions of section 12 of chapter 345 of the Laws of 1888, as amended by section 9 of chapter 255 of the Laws of 1890, enacting that, if the grade crossing commissioners of the city of Buffalo decide to change the grade of a street in that city, and also decide that "any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation," the grade crossing commissioners may apply to the court for the appointment of a commission to ascertain the compensation to be paid, an owner or person interested is entitled to compensation where his property, although not actually taken, is injured by the change made in the grade.

A lessee of premises, injured by an improvement made by grade crossing commissioners, is a party "interested" in the land which may be injured within the meaning of said section 12, and while not entitled to show a loss of profits

in his business as an element of damages, he may prove the effect upon his business while the grade crossing improvement was being made, and also its effect after its completion, as this bears on the question of the value of the property for business purposes, and is competent as affording a basis for apportioning the damages to the property as between the lessee and the owner.

The owner in such case is entitled to recover past damages as measured by his diminished rentals, and also damages to the fee.

A proceeding taken by the grade crossing commissioners of the city of Buffalo for the appointment of commissioners to ascertain the compensation to be paid to owners or parties interested in lands proposed to be taken by the commissioners, or which may be injured, is a special proceeding, and the allowance of costs rests in the discretion of the court.

APPEAL by The Grade Crossing Commissioners of the City of Buffalo and The New York Central and Hudson River Railroad Company from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 8th day of October, 1896, confirming the report of the commissioners appointed to ascertain and report the compensation to be paid to the owners and parties interested in the lands which may be injured by the construction of a viaduct over the tracks of the New York Central and Hudson River Railroad Company which cross Michigan street in the city of Buffalo.

May 22, 1888, an act entitled " An Act to provide for the relief of the city of Buffalo and to change and regulate the crossing and occupation of the streets, avenues and public grounds in said city by railroads " (Chap. 345, Laws of 1888) was enacted, which was amended by chapter 255 of the Laws of 1890 and by chapter 353 of the Laws of 1892. Before the passage of chapter 345 of the Laws of 1888 plans for obviating the then existing grade crossings had been recommended by a commission of engineers held at Buffalo in February, 1888, and the plans had been filed in the office of the city engineer. By section 1 of chapter 345 of the Laws of 1888, as amended by chapter 353 of the Laws of of 1892, a commission was appointed with authority to relieve the city from grade crossings, pursuant to the plans then adopted, and thereafter to be adopted by said commissioners, and to contract with railroad corporations interested for the abolishment of such crossings.

By section 5, as amended by chapter 255 of the Laws of 1890, it was provided that if any railroad corporation should fail to enter

into a contract, as provided for by section 1, the commissioners might proceed to relieve the city from grade crossings, as provided by the act.

By section 9 of chapter 345 of the Laws of 1888, as amended by chapter 255 of the Laws of 1890 and by chapter 353 of the Laws of 1892, it is provided that the city shall pay part of the expense, and the railroad corporation whose tracks are crossed by elevated structures shall pay part of the expense of the improvement, to be adjusted by a commission in case the commissioners and the corporation are unable to agree upon the proportion of the expense to be paid by each.

Section 12 of chapter 345 of the Laws of 1888, as amended by section 9 of chapter 255 of the Laws of 1890, provides:

"§ 12. If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them, that any street shall be closed or discontinued, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, or that any land shall be taken incident to the changes of the grade of any street, or to widen any street, or in the event that the commission shall undertake the work on the failure of the company or companies to do so, the commissioners, by their chairman, may apply to a Special Term of the Supreme Court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken, or which may be injured. * * * "

Michigan street extends northerly and southerly through the city and is crossed at right angles by the tracks of the New York Central and Hudson River Railroad Company, and at grade, before the construction of the viaduct.   Next north of the railroad is Exchange street, which crosses Michigan street at right angles.   Next south of the railroad is the Hamburg canal, which crosses Michigan street at right angles, and next south of the canal is Scott street, which crosses Michigan street at right angles.

The grade crossing commissioners adopted the following plan for crossing the tracks of the railroad by a viaduct in Michigan street:

" At Michigan street a viaduct to be constructed to carry Michigan street over the railroad tracks extending from the south line of Carroll street to the south line of the Main and Hamburg canal, the width of the viaduct and approaches to be fifty-six feet, forty-two feet of roadway and two sidewalks of seven feet width each, and to have approaches built of iron and stone ; the structures over the railroad tracks to be of iron ; the height of the structure to be thirteen feet from the grade of Exchange street, the grade of Exchange street being lowered one foot to admit such clearances. This changes the grade of the street so far as it is carried on this viaduct, commencing at its beginning near Carroll street, running southerly on a four per cent and 3.02 per cent rise till the floor of the viaduct reaches the height of 23.17 feet above datum or base line of levels ; thence level across the tracks of the railroad ; thence on a descending grade of four per cent until it reaches a point 112 feet south of the abutment on the south side of Hamburg canal. The height of the structure will be not less than fifteen feet over the railroad tracks."

The city constructed the viaduct, completed the improvement, and afterwards, and on May 19, 1896, the grade crossing commissioners signed and verified a petition praying for the appointment of commissioners to ascertain and report the just compensation to be paid to the owners and the parties interested in the land described in said petition as follows : " Beginning in the southerly line of Exchange street at its intersection with the westerly line of Michigan street ; running thence westerly along the southerly line of Exchange street two hundred and ten feet ; thence southerly at right angles to Exchange street one hundred and ten feet ; thence easterly, parallel to Exchange street, two hundred and ten feet to the west line of Michigan street ; thence northerly along the west line of Michigan street one hundred and ten feet to the place of beginning."

The property is known as the Continental Hotel property, and was occupied for a hotel and stores. The land of the railroad company, which is used for its tracks, adjoins the Continental Hotel property on the south, which said property is bounded on the east by Michigan street, and on the north by Exchange street.

On the 16th of June, 1896, the commissioners' petition was presented to a Special Term and three commissioners were appointed

to ascertain and report the amount of compensation to be paid to the owners and parties interested in the land described, for the injuries thereto occasioned by the improvement. September 23, 1896, the commissioners made and signed their report by which they awarded $91,589 damages, to be paid as follows:

To James W. Wadsworth, as owner.................... $59, 700
To Charles I. Baker, lessee of Continental Hotel....... 30, 530
To Jabez H. and Seward E. Peterson, lessees of a store... 1, 359

    Total........................................ $91, 589

The New York Central and Hudson River Railroad Company filed exceptions to the report (no other exceptions being filed), and upon the motion for confirmation (no other objections being made) objected to its confirmation, but it was confirmed by an order granted October 1, and entered October 8, 1896, from which order this appeal is taken.

*Spencer Clinton,* for the grade crossing commissioners, appellants.

*Charles A. Pooley,* for the New York Central and Hudson River Railroad Company, appellant.

*Herbert P. Bissell,* for James W. Wadsworth and others, respondents.

*Emory P. Close,* for Charles I. Baker, respondent.

*Brundage & Dudley,* for Jabez H. and Seward E. Peterson, respondents.

FOLLETT, J.:

The learned counsel for the New York Central and Hudson River Railroad Company insists that the order confirming the report of the commissioners should be reversed for four reasons: (1) That none of the property of the respondents having been taken, they, as owners and occupants of realty abutting on Michigan street, are not "lawfully entitled," under section 12, quoted in the statement of facts, to damages resulting from the construction of the improvement; (2) that the damages awarded are excessive; (3) that damages were erroneously awarded for diverting business from the property and for obstructing the street while the improvement was

being made; (4) that damages sustained by the occupants of the realty by the diversion of business during the construction of the improvement were erroneously included in the sum awarded.

The contention that the rights of the litigants in this proceeding are controlled by the cases of which *Ottenot* v. *The N. Y., L. & W. Ry. Co.* (119 N. Y. 603; S. C., 28 N. Y. St. Repr. 483); *Reining* v. *N. Y., L. & W. Ry. Co.* (35 N. Y. St. Repr. 731; affd., 128 N. Y. 157) and *Talbot* v. *The New York & Harlem R. R. Co.* (78 Hun, 473; affd., 151 N. Y. 155) are types, cannot be sustained.

*Ottenot's* case was an action at law to recover damages of the defendant for constructing an embankment in Commercial street, in the city of Buffalo, in front of the plaintiff's lots, for the purpose of carrying that street over the defendant's tracks in Water street. The obstruction complained of was an approach for an overhead crossing, the construction of which was authorized by the city, and it was held that the plaintiff could not recover damages of the defendant for changing the grade of the street under the authority of the city. The plaintiff did not seek redress under section 17 of title 9 of chapter 519 of the Laws of 1870 — the charter of the city of Buffalo.

*Reining's* case was an action at law for the recovery of damages of the defendant for having constructed its road on an embankment in and along Water street, in the city of Buffalo, which interfered with the use of the plaintiff's property. The embankment was not an approach for a overhead crossing — a change of grade — but it was an appropriation of Water street for railroad purposes, and it was held that damages were recoverable.

*Talbot's* case was brought to restrain the defendant from constructing, pursuant to legislative and municipal authority, a crossing in Forty-eighth street, in the city of New York, over its track which crossed that street. These cases, and many similar ones which might be referred to, are not germane to this proceeding which was begun, not by the landowner for the recovery of affirmative relief, legal or equitable, but was begun by the grade crossing commissioners to assess the damages occasioned to the real estate described in the proceeding by the proposed improvement. The contention of the counsel for the railroad company that, because none of the respondents' land was taken for the purposes of the improvement, the damages occa-

sioned to the land cannot be recovered, is not sustainable. Such is the general rule applicable to cases not controlled by statutes (*Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118), but this case is governed by section 12 of chapter 345 of the Laws of 1888, as amended by section 9 of chapter 255 of the Laws of 1890, and quoted in the statement of facts.

It is plain that the Legislature by this section intended that the city and the railroads should compensate the owners and persons interested in real estate (1) for land actually taken, and (2) for land not taken but injured by the construction of the improvements authorized by the act. It is contended in behalf of the railroad that it was the intention of the Legislature simply to authorize compensation to be made in cases in which landowners were entitled to recover damages under the general laws of the State. I do not so read the section. The words "the owners or persons interested therein are lawfully entitled to compensation," refer to persons who are lawfully entitled to compensation under this statute. But assuming that these words refer to rights to compensation existing under other laws or statutes, the case of the appellants is not helped, for when chapter 345 of the Laws of 1888 was passed, section 17 of title 9 of chapter 519 of the Laws of 1870 — the charter of the city of Buffalo — provided that "when the city shall alter the recorded grade of any street or alley the owner of any house or lot fronting thereon may, within one year thereafter, claim damages by reason of such alteration," which provision was incorporated in section 406 of chapter 105 of the Laws of 1891, the present charter of the city of Buffalo. The sections referred to also provide a mode for ascertaining and paying the damages occasioned abutting property by the change of the grade of the street, so, when chapter 345 of the Laws of 1888 was enacted, the owner of realty abutting on a street which was injured by changing the grade of the street was "lawfully entitled to compensation" therefor.

Under the Grade Crossing Statutes and the charter of the city of Buffalo, the owners and persons interested in land not taken, but injured by the improvements made, pursuant to these acts, are entitled to be compensated for the damages sustained.

The same view of the effect of these statutes was taken by the Third Appellate Division (*Matter of Grade Crossing Commission-*

*ers*, 6 App. Div. 327) though the precise point here considered was not involved in that proceeding, as, in that case, part of the land of the claimant was taken. The injustice of injuring abutting lands on streets by changing their grade for the benefit of the municipality has been recognized by a statute which provides that whenever the grade of any street, highway or bridge in any incorporated village is changed or altered, to the injury of abutting realty, compensation must be made. (Chap. 113, Laws of 1883 ; 3 R. S. [9th ed.] 2557.)

Are the damages awarded excessive ? Four witnesses, sworn in behalf of the landowner, estimated the difference in the value of the premises before and after the construction of the improvement. One estimated the damages at $100,000, one at $114,000, one at $129,000, and one at $160,000. The testimony of these witnesses shows that they are men of much experience in real estate in the city of Buffalo, and their competency to express an opinion is not questioned. The witnesses sworn in behalf of the city and of the railroad estimated the damages at a much smaller sum, but the commissioners appointed to assess the damages were freeholders of the city ; were in a position to judge of the value of the testimony of the witnesses, and, in addition, they saw the property, and were presumably selected for their knowledge of the values of real estate, and, it not appearing that they took into account any element not proper to be considered, their award should not be set aside as excessive.

Charles I. Baker was a lessee in possession of the hotel property under a lease extending from August 1, 1893, to December 31, 1899, at the annual rental of $7,000, and of two stores, under a lease extending from May 1, 1893, to May 1, 1900, at an annual rental of $1,200.

Jabez H. Peterson and Seward E. Peterson were lessees in possession of a drug store, under a lease extending from May 1, 1893, to May 1, 1896, with the privilege of renewal for two years, at an annual rental of $800. The improvement was begun May 16, 1895, when Michigan street was closed, and was completed the last of March, 1896. Evidence was given by the lessees and by others showing the effect on their respective businesses while the improvement was being made and its effect after its completion. This was

competent, not on the theory that the loss of the profits was an element of damages, but it bore on the question of the value of the property for business purposes. (*Drucker* v. *Manhattan Ry. Co.*, 106 N. Y. 157; *Doyle* v. *Manhattan Ry. Co.*, 128 id. 488; *Cook* v. *N. Y. Elevated R. R. Co.*, 144 id. 115.)

The lessees were "parties interested in the land  *  *  *  which may be injured," under the 12th section of the statute, and it was competent to show how their interests were affected for the purpose of apportioning the damages to the property between the owner and the lessees. The apportionment did not concern the city nor the railroad. There is nothing in the case justifying the inference that the loss of profits of the lessees was taken into account in estimating the damages.

The respondents were entitled to recover for the diminished rental value of the property from the time that work was commenced on the improvement down to the time when the easements were acquired — past damages — and also to recover the damages to the fee. The amount of rents received is not the measure of damages, but the difference in the rental value of the property is, and the actual effect of the improvement upon the property may be shown as bearing upon this question. Besides, under the statute, the lessees, as well as the owners, were entitled to their damages, and they were united in this proceeding by the grade crossing commissioners for the purpose of having the damages of all assessed in one proceeding.

The appeal of the grade crossing commissioners does not seem to require much discussion. They began this proceeding to have the damages to this property appraised. They filed no exceptions to the report of the commissioners; did not object to its confirmation, but, on the contrary, moved that it be confirmed. It is insisted in their behalf that they should have been allowed costs in addition to their disbursements. The following costs and disbursements were allowed :

| | |
|---|---:|
| To the grade crossing commissioners, disbursements... | $1,160 22 |
| To James W. Wadsworth, costs and disbursements ..... | 330 00 |
| To Charles I. Baker, costs and disbursements ......... | 100 00 |
| Jabez H. and Seward E. Peterson, costs ............. | 25 00 |
| Total....................................... | $1,615 22 |

One-half of this sum was ordered to be paid by the city and one-half by the railroad, "in accordance with the contract entered into between the grade crossing commissioners of the city of Buffalo and the said railroad companies to change the grade of Michigan street." The contract is not in the record, but we assume that its terms were made known to the Special Term and that its order is in accordance with the contract. This being a special proceeding, the allowance of costs was in the discretion of the court. (Code Civ. Proc. § 3240.)

The order should be affirmed, with costs to be taxed in favor of the respondents and against the appellants.

All concurred.

Order affirmed, with a bill of costs in favor of the lessee of the hotel, and a bill of costs in favor of the lessee of the drug store, and a bill of costs in favor of the owner of the fee to be taxed.