LOUISA RAUENSTEIN, Respondent, *v.* THE NEW YORK, LACKA-
WANNA AND WESTERN RAILWAY COMPANY, Appellant.

Where a railroad corporation, under statutory authority and with the con-
sent of the municipality, constructed its road along a city street, upon
an embankment above the grade of the street, and in order to permit of
travel upon an intersecting street, graded it up to the tracks, *held,* that
the owner of a lot which abutted upon the intersecting street, but not
upon the street along which the railroad was constructed, was not
entitled to recover from the railroad company damages caused by the
elevation of the roadway of the intersecting street in front of his lot;
that the embankment upon which the railroad tracks were laid, having
been erected under lawful authority, was not a nuisance, and consti-
tuted no invasion of the rights of any one save of the owners of lots
abutting on the street along which it was erected; and that· the grading
up of the intersecting street by the company was simply the perform-
ance of a duty imposed upon it by statute, it standing in the place of
the highway commissioners.

*Reining* v. *N. Y., L. & W. R. Co.* (128 N. Y. 157), distinguished.

(Argued December 13, 1892;  decided January 17, 1893.)

APPEAL from order of the General Term of the Superior
Court of the city of Buffalo, made July 6, 1892, which
reversed a judgment in favor of defendant entered upon a
decision of the court on trial at Circuit, and an order denying
a motion for a new trial and ordered a new trial.

This action was brought to recover damages of the defend-
ant for injuries alleged to have been sustained by the eleva-
tion of a part of the roadway of Commercial street, in the
city of Buffalo, in·front of her premises, which she alleges to
be an unlawful encroachment upon the street, an obstruction
to her lawful rights in it and a nuisance.

The facts are that the defendant railroad was laid through
Water street, and, where it intersected Commercial street,
was constructed upon an embankment about five feet and
nine inches above the former grade of Water street, made
necessary in order to cross Commercial slip.   In order
to permit of travel upon Commercial street over the rail-
road at this intersection of the streets, it was necessary

to raise the grade of Commercial street on either side of Water street, and this elevation of the grade of the street extended in front of and nearly the whole length of the street line of the plaintiff's premises. The embankment was within about a foot of plaintiff's sidewalk, and was some twenty feet in width. The plaintiff did not abut upon Water street, and her title to her lands was bounded upon Commercial street by the line of the street. As an abutting owner upon Commercial street, she bases the right to recover damages for the obstruction of the roadway in front of her premises, practically, upon the ground that if the construction by defendant of its embankment in Water street was illegal as to abutting owners there, the illegality of its act extended to the grading up of Commercial street, and in such degree as to subject it to liability to injured property owners in that street. An appeal from judgments recovered by her in the Superior Court of Buffalo was heard by this court in its Second Division (120 N. Y. 661), and the judgments were reversed, expressly upon the authority of our decision in the case of Ottenot against this same company, and a new trial was ordered. Upon the new trial the jury rendered a verdict for the defendant by the direction of the trial judge.

*John G. Milburn* for appellant. The defendant is not liable in this action. (*Ottenot* v. *N. Y., L. & W. R. Co.*, 28 N. Y. S. R. 483 ; *Conkling* v. *N. Y., O. & W. R. R. Co.*, 102 N. Y. 107; Laws of 1870, chap. 519; *Clark* v. *Blackmar*, 47 N. Y. 150; *People* v. *Kerr*, 27 id. 188; *Story* v. *E. R. R. Co.*, 90 id. 122; *Cogswell* v. *R. R. Co.*, 103 id. 10; *Bellinger* v. *R. R. Co.*, 23 id. 42; *R. Co.* v. *Truman*, L. R. [11 App. Cas.] 45; *R. Co.* v. *Brand*, L. R. [4 H. L.] 71; *Lahr* v. *R. R. Co.*, 104 N. Y. 292; *Heiser* v. *City of New York*, Id. 68.) As this case is not changed in its facts in any material particular from what it was when before the Second Division, a verdict was properly directed for the defendant. (*Oakley* v. *Aspinwall*, 13 N. Y. 500 ; *Furniss* v. *Ferguson*, 34 id. 484; *Joslin* v. *Cowee*, 56 id. 626 ; *Rauenstein* v. *N. Y., L. & W. R. R. Co.*, 120 id. 661.)

*George W. Cothran* and *O. C. De Witt* for respondent. It has been determined finally by this court that the action of the common council, under which the placing of this embankment in Commercial street is sought to be justified, did not amount to a change of grade — as applied to Water street. (*Reining* v. *N. Y., L. & W. R. R. Co.*, 128 N. Y. 157; Laws of 1887, chap. 599, §§ 1, 2, 6, 19; *Jeaume* v. *N. Y., L. E. & W. R. R. Co.*, 35 N. Y. S. R. 674.) The rule that, where there has been a change of grade in a public street or highway under competent legal authority, the owner of property, on a cross street or highway, has no remedy for any injury resulting to his abutting property from the elevation or depression of the street in front of his property to correspond with the change of grade in the other street has no application to this case. (*Conklin* v. *N. Y., O. & W. R. Co.*, 102 N. Y. 107; *Heiser* v. *Mayor, etc.*, 104 id. 68; *Behan* v. *P. J., etc., Co.*, 122 id. 18; *Radcliff* v. *Mayor, etc.*, 4 id. 194; *Reining Case*, 128 N. Y. 157.) The position of appellant's counsel, that because the Court of Appeals reversed this case substantially upon the same ground as the *Ottenot* case, that it is the law of the case that the plaintiff cannot recover, is not tenable. (Laws of 1870, chap. 519, § 8.) The authority vested in the common council to " permit the track of a railroad to be laid in, along or across any street or public ground," and also the authority conferred by the General Railroad Law has reference to placing tracks on grade, or in such manner as that no private rights are invaded thereby. (*Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 157–167 : *Fobes* v. *R., W. & O. R. R. Co.*, 121 id. 505.)

GRAY, J. The only difference between the facts of this case and that of the *Ottenot* case (119 N. Y. 603, but fully reported in 28 N. Y. St. Rep. 483) is that Ottenot's premises were on the opposite side of Commercial street, and the embankment in the street did not extend so as to entirely cover his side of the street; a fact, however, which can have no bearing upon the legal aspect of the question presented.

Though the members of this court did not all concur with the opinion which was delivered in the *Ottenot* case, they concurred in the result reached, on the ground of there being another remedy, as, also, because of error in the admission of evidence as to damages.

That other remedy was referred to in the opinion as being given by a certain provision of the city charter, providing for compensation to abutting owners, under certain conditions, where damaged by alterations in the grade of a street. Therefore, while the members of the court failed to concur with the opinion, in the general discussion of the question of the defendant's liability to plaintiff, all did agree that the defendant was not liable in damages, inasmuch as the construction in Commercial street was a change in the grade of the street, for any injury from which a remedy was given under the provisions of the city's charter. The position, then, is this: the concurrence of views in the *Ottenot* case being that there was a change in grade of the street, and, hence, no liability on the part of the company, can we now sustain this reversal by the General Term without overruling the Ottenot decision, and, likewise, the decision of the Second Division of this court; which held the present case disposed of by the *Ottenot* case? If we are prepared to do this, we must still go further, and hold that the rule laid down in *Conklin* v. *N. Y., O. & W. R. Co.* (102 N. Y. 107) is no longer authoritative.

The General Term opinion holds what seems to me a rather strange view of our recent decision in the case of Reining against this same defendant (128 N. Y. 157). It was supposed by that court that its effect was to so far modify previous views with respect to the legality of the structures in Water and Commercial streets, as to leave the general question open to further examination, notwithstanding the *Ottenot* case. Proceeding, thereupon, to consider the decisions in the *Conkling* case (*supra*) and the *Uline* case (101 N. Y. 98), a distinction was deemed to exist between them and the *Buffalo* cases; in that the railroad, in the former cases, was a lawful structure, whereas, in these cases, on the strength of the view

taken of the opinion in the *Reining* case, the construction in Water street was such an illegal appropriation of the street and so unauthorized an act as to constitute the structure a nuisance ; not only as to property owners upon the street, but as to those upon Commercial street, who were injuriously affected by the raising of the grade of the street to meet the railroad grade. The *Reining* case has been quite misapprehended by the court below. That case is no more controlling upon the disposition of the present one, than was the *Ottenot* case upon the *Reining* case ; as was remarked by Judge ANDREWS, who wrote in the *Reining* case. The plaintiffs in that case were property owners upon Water street and their right to recover compensation was placed upon the ground that the railroad company had practically excluded them from the use of the street, by the presence of the railroad upon the embankment, and had thus invaded a legal right belonging to the abutting property owner. The reasoning of the decision was that, while it was quite probable that the general interests of Buffalo and of the public were promoted by the appropriation of the street, it by no means followed that a lot owner, whose property is injured, should bear the loss for the public benefit. The learned judge said that the public cannot " justify such an appropriation of a street by a municipality in aid of a railroad enterprise ; " and that " the legislature cannot legally authorize structures for railroad purposes to be erected (in streets)   *   *   *   which practically exclude the abutting owners,   *   *   *   without compensating them for the injury suffered." Again, referring to the power conferred in the city charter with respect to streets, he held that the city " cannot, under guise of exercising this power, appropriate a part of a street to the exclusive, or practically to the exclusive, use of a railroad company, or so as to cut off abutting owners   *   *   *   without making compensation, etc." The opinion pointed out, clearly, the distinction between the case of a change of grade in the street, merely, and the case then at bar ; where the object of the elevation of an embankment in the street was to subserve the

railroad use, which was practically, if not wholly, exclusive. It was because of that distinction that I concurred with Judge ANDREWS, in his opinion; conceiving that a property owner not abutting upon Water street had no right to complain of a change of the grade in his side street, which a new and lawfully authorized use of Water street had rendered necessary in the interests of the general public. The *Reining* case has not modified any existing rule of law, as laid down in the *Uline*, *Conkling* and *Ottenot* cases. It did not hold that the embankment in Water street for the railroad accommodation was illegal, or that it constituted an invasion of the rights of any one; save as to those of property owners abutting on Water street. It distinctly recognized the existence of the railroad and of this embarkment as being under lawful authority; but for injuries occasioned to the property rights, within the principle of the decision in the *Story* case, an abutting owner could not legally be deprived of his right to compensation by the legislature.

As the *Reining* case, in no sense, overruled the *Ottenot* case, the question is to-day the same as it was when we had decided the *Ottenot* case, and I do not believe we could, with any appearance of consistency, sustain this plaintiff's right to recover compensation from the railroad company, when we denied it in the other case. Nor do I think we can overlook the fact that the *Conkling* case is a controlling authority upon the case before us. The opinion in the *Conkling* case was concurred in by all the members of the court. There the railroad company, in crossing a highway, constructed its road through a deep cutting; over which it built a bridge, to which, by embankments on either side of the cutting, the highway was graded up, so as to permit the continuance of the public travel as before. The plaintiff's property abutted on one of the embankments, and he also owned the fee to the center of the highway so changed, but his right to compensation was, nevertheless, denied; the grounds for the decision, in substance, being that a change of grade invades no private right, and, whatever the inconveni-

ence to the abutting owner, it takes from him no property right for which he has not been compensated. Judge FINCH, who delivered the opinion, remarked that if the highway "became such by dedication compensation for the easement was expressly waived. If taken by eminent domain, the compensation paid covered all the damages sustained, among which were necessarily embraced such as might flow from a change of grade required for the public use or convenience." "The right of the legislature," he said, "to permit a railroad company to cross a public highway, and either upon the same or a different grade, is, of course, conceded. In the latter case a corresponding change in the grade of the highway becomes necessary." The opinion proceeds to hold that the duty of making that change being imposed by statute upon the railroad company, instead of being left to the commissioners of highways, the company, in the work of restoration, stands in the place of the highway commissioners, without any responsibility to abutters and having all the official rights of highway commissioners. The logical sequence of the opinion of the court in the *Conkling* case is, obviously, to exempt a railroad company from liability for the consequences of a change of grade in city streets, which is rendered necessary where intersected by the railroad structure, however great may be the inconvenience resulting to abutting property owners. The source of the authority of the railroad company in the *Conkling* case was the same as that under which the company has acted in this case. In either case, under the provisions of the General Railroad Act, the power is conferred to construct the railroad across any street or highway, "which the route of its road shall intersect, or touch ; but the company shall restore the street or highway etc., thus intersected, or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness." In the case of highways, the consent of the commissioners, or an order of the Supreme court, is required, while in cities, the assent of the municipal authorities is to be had and, in the present case, the giving of such assent was provided for in the city charter. It is thus evident that the source of the power to

change the grade of the street, to permit of carrying it over the railroad crossing, is in the general or public law; which creates a duty in that respect, which is transferred from the local authorities to the shoulders of the railroad company; in the performance of which it stands in the place of the local authorities, with all their immunity from responsibility for any consequential damages; not attributable, of course, to negligence in the manner of performance. If, however, in performing this work of restoring the intersected street to its former state of public usefulness, the company is invested with the immunity conferred upon the local authorities, how can the abutting owner have a legal cause of action for an alleged injury resulting from the change in grade? In reference to the restriction upon the absolute nature of the right of abutting owners, in the case of a municipal control of streets in the public interest, even when privileges and benefits previously enjoyed from the original condition of the streets are curtailed or impaired by the changes, Judge ANDREWS cites (*Reining* case *supra*) "the cases of change of grade" as furnishing "apposite illustrations." In *Uline* v. *N. Y. C. & H. R. R. R. Co.*, (101 N. Y. 98), where the street and sidewalk in front of the plaintiff's premises were raised by the company, so as to conform the grade of the street to the grade of the railroad, it was said in the opinion; "so much it (the defendant) was bound by law to do under the General Railroad Act, it (the street) was not, in front of plaintiff's premises, by the act of the defendant, devoted to anything but street purposes and as the city could have raised the grade of the street without liability to abutting owners, so it could authorize the defendant to do so without such liability."

It is apparent that the General Term below, in the discussion as to the lawfulness of the defendant's railroad construction in Water street, failed to consider the distinction between a case where a statute confers authority upon a corporation to take the property of individuals for some public purpose, without making a provision for compensation, and a case where the legislature, exercising an undoubted right, subjects the public property to some new public use, by some extraordinary fea-

tures of which, however, natural rights, or easements appur‑ tenant to abutting property owners and constituting property rights, are interfered with and consequential injuries ensue. In the first case, the statute would be unconstitutional and void, and could confer no rights upon the legislative grantee; while in the latter case there could be no question as to the constitutionality of the act and as to the legality of an occupa‑ tion in pursuance of the act by the grantee; but for the dam‑ ages, which could be proved as directly consequential to the use, in its peculiar features, an injured abutting landowner could recover. That, I think, was the theory of the decision of the *Story* case (90 N. Y. 122).

The two guiding principles to be deduced from the authori‑ ties are, that the defendant, being lawfully in Water street, by authority of the public law and with the assent of the munici‑ pality, was not a nuisance, and, except as to abutters, invaded no legal rights; and that, in building the embankment in Com‑ mercial street, to permit of unimpeded travel upon that street over the railroad in Water street, the defendant was perform‑ ing a duty imposed by the public law and prescribed by municipal ordinance, and, hence, could come under no respon‑ sibility to adjoining landowners. In this connection, I may say that for such consequential damages as are sought to be recovered here from a railroad company, which is lawfully in the occupation and use of a street, but which, incidentally, is the occasion of injury to property owners in an adjoining street, by reason of its performance of the statutory duty to conform its grade to the new use, the legislature might very properly, under limitations, grant a remedy. Without such remedial legislation, however, the case is one of *damnum absque injuria.* Nothing in the *Reining* case is in contra‑ diction of the views expressed, and in support of them we have much authority, running back from the *Uline* case (*supra*) to that of *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (4 N. Y. 195).

This construction in Commercial street was a change of grade, made by the defendant under legal compulsion, and individual interests are as much subordinate to the require‑

ments of public interests in such a case, as, concededly, they would be if, as matter of fact, the city authorities had done the work themselves.   As matter of law, its performance by the defendant was a performance by a constituted public authority.   In the opinion in the *Reining* case, Judge ANDREWS defined the line of the limitation to public powers in the control over city streets to be reached, when they invaded an abutter's rights.   But, outside of that line, "provided that the change be made under lawful authority," the owner "has no legal redress for any injury to his property, however serious, caused by a change of grade."   BRONSON, Ch. J., in *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (*supra*), in illustrating the extent to which acts may go without rendering persons answerable for the consequences to others, speaks of those cases " which hold that persons acting under an authority conferred by the legislature to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway.   And this is so " (he adds) " whether the damage results from cutting down or raising the street, and although the grade of the street had been before established, and the adjoining landowners had erected buildings with reference to such grade."   The principle seems applicable to this case, where the defendant, acting under the authority of the legislature, has changed the grade of Commercial street.   I am quite unable to see how we can sustain the order appealed from, whether we consider what was decided with respect to the question of the defendant's liability in the *Ottenot* case, or whether we consider the rule laid down in the *Conkling* case, and in prior decisions.

I think the order of the General Term appealed from should be reversed, and the judgment of nonsuit should be affirmed, with costs in both courts.

All concur, except O'BRIEN and MAYNARD, JJ., dissenting, and ANDREWS, Ch. J., not voting.

Order reversed and judgment affirmed.