In the Matter of the Application of THE GRADE CROSSING COMMISSIONERS OF THE CITY OF BUFFALO in Relation to Michigan Street.

THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY and THE GRADE CROSSING COMMISSIONERS, Appellants; JAMES W. WADSWORTH et al., Respondents.

1. CITY OF BUFFALO — GRADE CROSSING ACT — AWARD FOR INJURY FROM CHANGE OF GRADE OF STREET. Under the provisions of the Grade Crossing Act of the city of Buffalo (L. 1888, ch. 345, § 12, amd. L. 1890, ch. 255) which authorize the grade crossing commissioners to procure the appointment of commissioners of award when they have decided that the grade of a street shall be changed and that any property may be injured by the improvement "for which the owners or persons interested therein are lawfully entitled to compensation," an injury to property by change of grade of the street (as, by an overhead viaduct) may be the subject of an award to the owners or persons interested, although the property is not actually taken.

2. "LAWFULLY ENTITLED TO COMPENSATION." This is so, even on the assumption that the words "are lawfully entitled to compensation" refer to such right of compensation as was already authorized by existing laws and did not create any new right, since at the time of their enactment abutting property owners were lawfully entitled, under the city charter, to compensation for injuries caused by a change of street grade, when made by the city.

*Matter of Grade Crossing Commissioners*, 17 App. Div. 54, affirmed.

(Argued December 6, 1897; decided January 11, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 28, 1897, affirming an order made at Special Term confirming the report of commissioners appointed to assess the damages to property injured by a change of the grade of Michigan street in the city of Buffalo.

This proceeding was instituted under chapter 345 of the Laws of 1888, as amended by chapter 255 of the Laws of 1890, and chapter 353 of the Laws of 1892, known as the Grade Crossing Act of the city of Buffalo, to procure the appointment of commissioners to ascertain and report the

compensation to be paid to the owners and parties interested in certain lands injured by the construction of a viaduct over the tracks of the New York Central & Hudson River Railroad Company as they cross Michigan street in said city. The facts, so far as material, appear in the opinion.

*Spencer Clinton* for the grade crossing commissioners, appellant.

*Charles A. Pooley* for New York Central and Hudson River Railroad Company, appellant. An appeal lies in the Court of Appeals from the order and judgment appealed from. (Code Civ. Pro. § 190, subd. 1; *People ex rel.* v. *Campbell*, 152 N. Y. 51; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 526; *In re De Camp*, 151 N. Y. 557; *McMahon* v. *Rauhr*, 47 N. Y. 72; *R. & S. R. R. Co.* v. *Davies*, 43 N. Y. 137; *In re L. I. R. R. Co.*, 45 N. Y. 368.) No portion of the respondent's property was taken. The construction of the viaduct within the lines of Michigan street constituted a change of grade of the street, and the owners of property fronting on the street are not lawfully entitled to compensation for resulting consequential damages. The commissioners, therefore, had no jurisdiction to award damages. (*Talbot* v. *N. Y. & H. R. R. Co.*, 151 N. Y. 155; *Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 170; *In re Grade Crossing Comrs.*, 6 App. Div. 327.)

*Herbert P. Bissell* for James W. Wadsworth, respondent. The Grade Crossing Act conferred jurisdiction upon the commissioners to award damages to the respondents. (*In re Grade Crossing Comrs.*, 6 App. Div. 327; *Newman* v. *M. E. R. Co.*, 118 N. Y. 618.) The Grade Crossing Act also provides for compensation being awarded, even if the structure erected is a change of grade. (L. 1888, ch. 345, § 12; L. 1890, ch. 255, § 9.) The appellate court will not interfere with the report of the commissioners to correct the amount of damages awarded except in cases of gross error showing prejudice or corruption. (Mills on Em. Dom. § 246;

*In re U., C. & S. V. R. R. Co.,* 56 Barb. 456; *T. & B. R. R. Co.* v. *Lee,* 13 Barb. 169; *In re G. El. R. Co.,* 38 Hun, 438; *In re B. El. R. R. Co.,* 55 Hun, 165; *In re N. Y. C. & H. R. R. R. Co.,* 64 N. Y. 60; *In re N. Y., L. E. & W. R. R. Co.,* 99 N. Y. 388; *In re N. Y., L. & W. R. R. Co.,* 27 Hun, 116.)

*Emory P. Close* for Charles I. Baker, respondent. No appeal lies to this court from the order of the Appellate Division and judgment entered thereon affirming the order of the Special Term confirming the report of the commissioners herein. (*In re S. B. R. R. Co.,* 141 N. Y. 532; *In re S. B. R. R. Co.,* 143 N. Y. 253; *In re Comrs. of State Reservation at Niagara,* 102 N. Y. 734; *In re B. El. R. R. Co.* v. *Flynn,* 147 N. Y. 344.) The appraisal proceedings herein were authorized by the Grade Crossing Act. (*In re Grade Crossing Comrs.,* 6 App. Div. 327; *Folmsbee* v. *City of Amsterdam,* 142 N. Y. 122.) By the charter of the city of Buffalo, abutting property owners are lawfully entitled to damages occasioned by a change of grade. (L. 1891, ch. 105, § 406; 2 Dillon on Mun. Corp. § 587; Lewis on Em. Dom. 213, § 108; 2 R. S. [8th ed.] 1387, 1388.]

VANN, J. This appeal arises under an act of the legislature entitled "An act to provide for the relief of the city of Buffalo and to change and regulate the crossing and occupation of the streets, avenues and public grounds in said city by railroads." (Laws of 1888, ch. 345, as amended by ch. 255 of the Laws of 1890, and ch. 353 of the Laws of 1892.) The object of this act was to do away with grade crossings through the action of the city in co-operation with the railroad companies centering in or passing through the same. The agency adopted to accomplish this object was a commission, composed of ten citizens of the county of Erie, known as grade crossing commissioners, who were clothed with varied and extensive powers. Their first duty was to prepare a general plan for the improvement; but, before it was finally

adopted, they were required to give the railroad companies a hearing, at which witnesses could be called by them and by the city to testify as to the feasibility and expediency of the proposed changes. Upon adopting the plan, the commissioners were authorized to carry it out by contracting with the railroad companies as to the amount of work to be done by them and by the city or as to the proportion of the expense to be paid by each. If no agreement was made, the commissioners could proceed by compulsion through the Supreme Court to apportion either the work or the cost thereof between the city and the companies, and to compel the latter to perform or pay their share as the case might be. The part of the expense that fell upon the city was to be met by general taxation. Power was conferred to acquire lands, to close, discontinue, widen or change the grade of any street, and to ascertain the damages sustained by any person by reason thereof, through commissioners appointed by the courts. Other general powers and duties were to be exercised or performed by the grade crossing commissioners, but mention of them is not essential to a proper understanding of the question that we are called upon to decide. That question arises under section twelve of the act which provides that "if the commissioners shall decide that it is necessary for the purpose of carrying out any plan * * * adopted by them, that any street shall be closed or discontinued, or that the grade of any street or portion of any street * * * shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, or that any land shall be taken incident to the changes of the grade of any street, * * * the commissioners, by their chairman, may apply to a Special Term of the Supreme Court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the lands proposed to be taken, or which may be injured." After making provision for the nature of the petition and service thereof upon " each person named therein as an owner of, or interested in the

70

lands," and for the trial of any issue raised by answer or demurrer, the section further provides that, "if no answer or demurrer to the petition is filed or if the issue upon an answer or demurrer is decided against the person filing the same, the court shall appoint three disinterested freeholders of the city of Buffalo commissioners to ascertain and report the just compensation to be paid to the owners of and parties interested in the lands for taking the same or for the injury thereto. * * *" The commissioners, so appointed, are empowered to issue subpœnas and are required "to hear the proofs and allegations of the parties and report the evidence taken before them together with their decisions of the amount of compensation to be paid to the owners" of lands taken, "or if the lands are not taken, the amount to be paid for injury thereto by carrying out the proposed plan, and " to "designate to whom such compensation shall be paid and in what sums, according to their respective interests." Provision is made that, upon the filing of their report, any party interested may move the court for confirmation thereof, and, upon confirmation, the court is directed to "fix the amount of damages, costs and expenses allowed by law to be allowed the landowner and the petitioner, and shall order the same to be paid by the railroad or railroads interested and the city as and in such proportion as shall have been fixed by the commission, or by the agreement provided for in section nine. * * * Upon such payment * * * being made by the city, the fee of the lands sought to be taken shall vest in the city, and all claims for damages to the property claimed to be injured shall be extinguished."

An appeal may be taken by either party from the report of the commissioners and the order of the Special Term confirming such report, to the Appellate Division of the Supreme Court, which is required on such appeal to examine the proceedings before the commissioners and to affirm, modify or reverse the order of the Special Term and such report, and in case of reversal to remit the proceedings to the same or to new commissioners to be appointed by the Special Term " and their report shall be final."

At the time this proceeding was commenced, Michigan street, in the city of Buffalo, running substantially north and south, crossed at right angles and at grade the tracks of the New York Central & Hudson River Railroad Company, as well as Exchange street next to the north and the Hamburg canal next to the south. The general plan adopted by the grade crossing commissioners for the improvement in Michigan street provided for the construction of a viaduct over the railroad tracks fifty-six feet wide, forty-two feet thereof to be used as a roadway, and seven feet on each side for sidewalks. The approaches were to be built of iron and stone and the erection over the tracks of iron only. The entire structure beginning at grade on the south was to reach a height of thirteen feet over Exchange street, which was to be lowered one foot, and fifteen feet over the railroad tracks, and then to gradually reach grade again on the north. The length of the approaches was to be such as to make an easy ascent on one side and an easy descent on the other for the use of persons walking or driving.

After the city had built the viaduct, the grade crossing commissioners commenced this proceeding, alleging in their petition that they had decided that, in order to carry out their general plan, it was necessary to change the grade of Michigan street as therein provided, " and that the property known as the Continental Hotel * * * may be injured, for which the owners or parties interested therein are lawfully entitled to compensation." A description of the premises was given, with the names of the owners and parties interested therein. Upon due notice to them and to said railroad company an order was made by the Special Term, which, after reciting the foregoing facts in substance, appointed three commissioners " to ascertain and report the amount of compensation to be made to the owners and parties interested in the land hereinabove described for injury thereto by carrying out the proposed plan " and to " designate to whom such compensation shall be paid and in what sums according to their respective interests."

Upon the trial it appeared that certain property known as the Continental Hotel, specifically described in the petition, was situated on the southwest corner of Exchange and Michigan streets, with a northerly frontage of two hundred and ten feet on the former, and an easterly frontage of one hundred and ten feet on the latter; that the entire lot, except an alley ten feet wide running from Michigan street to the New York Central station, was covered by the hotel building four stories in height, and that the land upon which the tracks of the railroad company are located adjoins the hotel property on the south. The commissioners awarded $59,700 to James W. Wadsworth as owner; $31,889 to Charles I. Baker as lessee of said hotel, and $1,359 to Jabez H. Peterson and another as lessees of a store under the hotel. No part of this property was actually taken in order to make the improvement, but the viaduct above described was immediately in front of the large building on the lot, and was so situated as to interfere with its light, air and access.

Although no answer was served by the New York Central and Hudson River Railroad Company, it filed exceptions to the report, but upon motion of the grade crossing commissioners, after due notice to all concerned, an order of confirmation was made by the Special Term which upon appeal was affirmed by the Appellate Division. Both the railroad company and the grade crossing commissioners appealed to this court, but the latter in their points state that the object of their appeal was to answer any claim that the appeal of the railroad company was not properly taken, as well as to protect the interests of the city.

As the grade crossing commissioners decided, before commencing this proceeding, that the grade of Michigan street should be changed, and that the property of the respondents might be injured thereby, as permitted by section 12 of said act, the question as to the status of the respondents, if that decision had not been made, is not involved in this appeal. That question led to a division of opinion among the learned judges of the Appellate Division in the third department,

but we are not now called upon to consider it. (*Matter of Grade Crossing Commissioners*, 6 App. Div. 327.) The only question which the learned counsel for the appellants ask us to decide in this proceeding is, whether the commissioners had jurisdiction to award compensation for the consequential damages resulting from the construction of the viaduct in Michigan street, inasmuch as no part of the respondents' property was taken. The position of the railroad company is that the commissioners had no jurisdiction to make an award, because there is no statute authorizing it, and that in the absence of such a statute there can be no recovery against a city for changing the grade of a street, according to many carefully considered cases. (*Talbot* v. *N. Y. & Harlem R. R. Co.*, 151 N. Y. 155; *Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118; *Rauenstein* v. *N. Y., L. & W. R. Co.*, 136 N. Y. 528; *Ottenot* v. *N. Y., L. & W. R. Co.*, 119 N. Y. 603; *Conklin* v. *N. Y., Ontario & W. R. Co.*, 102 N. Y. 107.)

On the other hand, the respondents claim that the improvement involved not simply a change of grade, but the erection of a structure similar in character to that of an elevated railroad, as that part of Michigan street adjacent to the property in question is left open and accessible to use the same as before, except in so far as it is occupied by the iron columns which support the viaduct, and is absolutely closed at the line of the railroad property; that the right of an abutting owner to compensation for damages under such circumstances is established by the principle underlying the *Story* case, and many other familiar decisions relating to the liability of elevated railroads for interference with light, air and access (*Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Newman* v. *Met. El. R. Co.*, 118 N. Y. 618, 625; *Bohm* v. *Met. El. R. Co.*, 129 N. Y. 576); that the *Talbot* and other cases relied upon by the appellants have no application because they were begun by landowners for affirmative relief, while this proceeding was begun by the grade crossing commissioners themselves, to assess the damages caused to the real estate in question by the construction of the viaduct, and that not only by the common law, but by the act

under consideration, as well as the charter of the city of Buffalo, the respondents, as abutting owners, were "lawfully entitled to compensation," even for a mere change of grade.

Whether the legislature intended by the Grade Crossing Act to confer jurisdiction to assess damages caused, not by actually taking land, but by injuring land not taken, was thoroughly discussed before us. If the attention is confined to the language of section twelve, where it says, in substance, that if the commissioners shall decide that any property may be injured by the improvement " for which the owners or persons interested therein are lawfully entitled to compensation," such property may be the subject of an award, an intent may be inferred to give such compensation only as was already authorized by existing laws, and not to create any new right or to impose any new liability. Yet the fact that when the commissioners decide that certain property may be injured, and themselves institute the proceeding, making the owners of such property parties, full compliance with the provisions of the section extinguishes " all claims for damages to the property claimed to be injured," tends to indicate an intention on the part of the legislature to recognize the right of the landowner to compensation for the injury done to his property in carrying out the general plan. Moreover, the broad purpose of the statute, when the title and all the sections are read together, the public nature of the evil to be remedied, the general benefit to be conferred by the improvement, and the general charge upon all the taxable property for the expense thereof, so far as it falls upon the city, should not be lost sight of. A literal construction of the words " are lawfully entitled " would lead toward the meaning that the owner must be entitled to compensation when the act was passed, while a liberal construction of those words in connection with the entire act, which recognizes the fact that lands may be injured as well as taken, would lead toward the meaning that the owners of lands injured by the act " are lawfully entitled " to compensation under the act.

While we suggest, we do not decide this question, as it has

caused some difference of opinion among the members of the court, and we prefer to base our decision upon grounds that are satisfactory to all.

It is provided by section 406 of the charter of the city of Buffalo that "when the city shall alter the recorded grade of any street or alley, the owner of any house or lot fronting thereon may, within one year thereafter, claim damages by reason of such alteration. Upon presentation of such claim, the board of aldermen shall refer it to the board of assessors. The board shall hear the claimant and award such damages as shall be just. In case the board shall award damages to any person, it shall assess the same upon the real estate benefited by the alteration. The amount so assessed shall, when collected, be paid to such claimant." (Laws of 1891, ch. 105, § 406.) This was a substantial re-enactment of section 17, title 9, chapter 519 of the Laws of 1870, which is said to have been passed to relieve property owners in the city of Buffalo from the hardship of the rule laid down in the *Conklin* and kindred cases, that a change of grade upon a highway when duly authorized invades no private right. Upon the assumption, therefore, that the words "lawfully entitled to compensation," as used in section 12 of the Grade Crossing Act, refer to the right to compensation according to the common law or to statutes in force when that act was passed, still it is clear that at that time property owners were lawfully entitled to compensation under the city charter for injuries caused by a change of grade, when made by the city. The learned counsel for the railroad company contends that while the charter gives the property owner the right to claim damages, it leaves to the board of assessors the power of determining whether compensation shall be awarded, and if so to fix the amount.

It is doubtless true that the assessors must find as a fact that the lands have been actually injured before they can award any damages. The command of the statute is that "the board shall hear the claimant and award such damages as shall be just," and "in case" they make an award, the

amount thereof shall be paid to the claimant. Just damages can be based only upon the fact of injury found upon evidence tending to show injury done. This leaves nothing to the discretion of the assessors. They are to find or refuse to find the fact upon common-law evidence, which leaves no more discretion to them than to any tribunal required to pass upon a question of fact. When this fact is once found in favor of the landowner, his right to recover and the duty of the city to pay adequate compensation is absolute and is not affected by the method provided for raising the money. While the section does not in so many words say that the city shall be liable for any damages caused by changing the grade of a street, the right to such damages follows by necessary implication from the duty cast upon the assessors of passing upon the claim and awarding such damages as shall be just, and the further duty cast upon the city of paying the amount so awarded to the owner. The case of *Reining* v. *N. Y., L. & Western R. Co.* (128 N. Y. 170), relied upon by the appellants, instead of aiding them, aids the respondents. In that case damages were recovered by the abutting owner in an action at law from a railroad company for constructing its road on an embankment in one of the public streets of the city of Buffalo. So far as said provision of the charter was considered, it was held to afford a remedy for damages from changes of grade where no right to damages existed before; that it did not so apply to the case then in hand as to confine the claimants to the statutory remedy provided against the city, and that the common-law remedy for the injury was not cut off by the provision of the charter. It was also held that the embankment was not a change of grade within the meaning of the charter provision, which was designed to afford a new remedy and not to interfere with an old one, but was practically and substantially the closing of the street for ordinary uses. That case, therefore, not only recognizes the right of the owner to recover damages under the charter for a change of grade, but also holds that he has a right to recover his damages at common law when the alteration was not a

mere change of grade, but a substantial appropriation of the street by a permanent structure.

We think that the respondents were lawfully entitled to compensation, under the provisions of the city charter, for any injury to their property caused by the change of grade, if it may be called such, and that, therefore, the commissioners appointed under the Grade Crossing Act had jurisdiction to assess the damages, which, when confirmed by the court and ordered paid by the railroad and the city in such proportions as were fixed by the commission, became final and binding obligations upon those corporations respectively, enforceable in the usual way.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.