## In re GRADE CROSSING COM'RS OF CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   May 22, 1900.)

1. EMINENT DOMAIN—CHANGE IN STREET GRADE—DAMAGES—AMOUNT.
   Owners of abutting property injured by a change in a street grade made under the Buffalo grade crossing act (Laws 1890, c. 255, § 12, as amended), authorizing the recovery of damages for such injuries, are entitled to recover damages resulting while the work is being done before the easements are acquired by condemnation proceedings, as well as those resulting permanently to the fee on account of the improvement.

2. SAME—DAMAGES—SETTING ASIDE AWARD.
   An award by commissioners appointed in condemnation proceedings to assess damages sustained by changing a street grade, supported by evidence supplemented by an inspection of the property, will not be set aside as excessive.

3. SAME—REVIEW.
   An order confirming an award of damages in condemnation proceedings, which settles important rights to many parties, will not be reversed for the rejection of a trivial claim.

Appeal from special term, Erie county.

Application of the grade crossing commissioners of the city of Buffalo to ascertain the compensation of parties injured by changing a street grade.   From an order confirming the report of the commissioners of appraisal, the commissioners and others appeal.   Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Spencer Clinton, for appellants.

Miles C. Bartholomew, S. A. Simons, and George L. Kingston, for respondents.

McLENNAN, J.   The act in question provides, among other things, as follows:

"The court shall appoint three disinterested freeholders of the city of Buffalo commissioners to ascertain and report the just compensation to be paid to the owners of and parties interested in the lands, for taking the same or for the injury thereto, and shall name the time and place for the first hearing before the commissioners.   The commissioners shall meet at such time and place, and having first taken an oath to faithfully discharge their duties as commissioners, and to ascertain and report the just compensation to be paid to the owners of and parties interested in the lands, for the taking the same, or for the injury thereto, to the best of their ability, they shall view the lands sought to be taken or claimed to be injured.   *   *   *   They shall hear the proofs and allegations of the parties and report the evidence taken before them, together with their decisions of the amount of compensation to be paid to the owners and parties interested in the lands sought to be taken for such lands, or, if the lands were not taken, the amount to be paid for injury thereto by carrying out the proposed plan, and shall designate to whom such compensation shall be paid and in what sums according to their respective interests.   Upon such report being filed, any party interested may move the court for confirmation thereof, and it shall be confirmed."

Provision is then made for an appeal to the general term by any party interested, and the act then proceeds:

"The general term on such appeal shall examine the proceedings before the commissioners, and may affirm or modify the order of the special term and the report of the commissioners, or reverse the same and remit the proceedings to

64 N.Y.S.—49

the same commissioners, or to new commissioners to be appointed by the special term, and their report shall be final."

Laws 1890, c. 255, § 12, as amended.

The petition of the grade crossing commissioners in this proceeding was dated and verified on the 28th day of June, 1898, and asked for the appointment of three commissioners to ascertain and report the just compensation to be paid to the owners of and parties interested in the lands which may be injured by the change of grade in Seneca street, Smith street, and Fillmore avenue, for the purpose of carrying Seneca street over the railroad tracks, which changes the petitioner was authorized to make under the provisions of the act above referred to; one half of the expenses thereof to be borne by the city of Buffalo, and the other half to be apportioned between and paid for by certain railroad companies benefited by such improvement. Thirteen pieces of real estate were described in the petition, which the grade crossing commissioners determined might be injuriously affected by the proposed changes. The owners of such real estate, the tenants, mortgagees, and lienors, were all made parties to this proceeding as persons interested. Upon due notice to all such owners and persons interested, such petition was presented to the supreme court at a special term held in the city of Buffalo on the 1st day of August, 1898, and application was made for the appointment of commissioners to ascertain and report the just compensation to be made for the injury done by such change of grade to the owners or persons interested in said several pieces of property. All such interested parties, the city of Buffalo, and the railroad companies interested appeared upon such application. After hearing the respective parties, the prayer of the petition was granted, and three residents of and freeholders in the city of Buffalo were duly appointed such commissioners of appraisal. Thereafter, at a time and place properly designated, the commissioners met pursuant to notice to all the parties interested, duly organized, viewed the premises, and the attorneys for and the respective parties attended before them from time to time, and a large amount of evidence was given tending to show the amount of injury sustained by the respective parties by reason of the construction and completion of the improvement. Thereafter, and on the 18th day of July, 1899, the commissioners of appraisal duly made and filed their report, specifying the amount of damages done to each of the 13 pieces of real estate described in the petition on account of the changes made in the grade of the streets and the work done therein, and as to which evidence had been given. The total award amounted to about $61,000. The report of the commissioners stated:

"* * * All of us being present, did ascertain, determine, and decide the amount of compensation to be paid to the owners of and parties interested in the lands sought to be taken, including the amount to be paid for injury to the parts of the lands not taken by carrying out the plan of the grade crossing commissioners, and designate the following persons as those to whom such compensation shall be paid, to each according to their respective interests, to wit."

The form of the award relating to parcel No. 1, which was in the words and figures following, illustrates the manner in which the award respecting each of the other pieces of property was made:

"Parcel No. 1. To Jacob Duchmann, owner of the parcel of land described in and designated in the petition herein as 'Parcel No. 1,' the sum of sixteen hundred and fifty dollars and ninety-seven cents ($1,650.97) past damages accruing between the commencement of the work of construction of the approaches to the viaduct in Seneca street, Smith street, and Fillmore avenue, and the reopening of said street for traffic,—making in all the total sum of two thousand four hundred and six dollars and ninety-seven cents ($2,406.97); less such sum as may accrue for interest from and after the first day of July, 1899, upon the awards hereinafter made for taxes and assessments. To the city of Buffalo, in payment of certain taxes and assessments upon said land, the sum of one hundred eighty-six dollars and thirty-eight cents ($186.38), with such interest as may accrue thereon from and after the first day of July, 1899. To the county of Erie, in payment of certain taxes and assessments upon said lands, the sum of sixty-eight dollars and ninety cents ($68.90), with such interest as may accrue thereon from and after the first day of July, 1899. To Katherine Duchmann, wife of said Jacob Duchmann, for her dower interest in said lands and premises, nothing. To Thomas W. Donovan, Edward McKinney, and Catherine Austin, as tenants upon said premises, nothing."

The awards respecting each of the other 12 pieces of property were made in substantially the same form, except as to the amount, and it will be seen that the gross amount of damage done by the change of grade in question to each piece of real estate was ascertained and determined, but that such sum was made up of two items, called by the commissioners "damage to the fee" and "past damages"; and from such sum the amounts due for taxes, upon mortgages, to tenants and lienors, were deducted, and directed to be paid in satisfaction of such taxes, and to such mortgagees, tenants, and lienors. Upon the report of the commissioners so made, a motion for its confirmation upon notice to all parties interested in said premises was made at a special term of the supreme court held on the 8th day of September, 1898, and, after all had opportunity to be heard, said report was duly confirmed. From such order of confirmation this appeal is taken by the grade crossing commissioners and by certain interested railroad corporations, interested because under the grade crossing act they became obligated to pay their proportionate share of such awards, and by one Margaret Keating, who is not a party to this proceeding, but who was a tenant of the premises known as "Parcel No. 4," and who claims to have sustained damage by reason of the occupation of the street for the purpose of making the change in its grade, and which interfered with her business, which was that of a milliner. All the other owners or persons interested in the property affected by the improvement, and parties to the proceeding, insist that the award should be confirmed, and some of the interested railroad corporations did not file exceptions to the report of the commissioners of appraisal, and do not join in the appeal from the order confirming the same.

The appellants, with the exception of Margaret Keating, above referred to, as appears by their briefs upon this appeal, attack the commissioners' report solely upon the ground that the commissioners, in addition to awarding damages for the injury done to the fee of the several pieces of property, awarded what they denominated "past damages," or damages sustained by the owners or persons interested in the property accruing between the commencement of the work of construction and the reopening of said streets for traffic, and before the fee or easements were acquired or proceedings instituted for that pur-

pose. We think the question was decided adversely to the appellants' contention by this court in Re Grade Crossing Com'rs of City of Buffalo, 17 App. Div., 54, 44 N. Y. Supp. 844, affirmed in 154 N. Y. 550, 49 N. E. 127. That was a proceeding instituted under the Buffalo grade crossing act (the act in question), and the commissioner of appraisal awarded damages to the owner of the property affected as such for $59,000, to the lessee of a portion of the property for $30,530, and to the lessee of another portion the sum of $1,359. One of the grounds of error alleged upon appeal in that case was:

"(4) That damages sustained by the occupants of the realty by the diversion of business during the construction of the improvement were 'erroneously included in the sum awarded."

Mr. Justice Follett, in writing the opinion of the court, said:

"The respondents were entitled to recover for the diminished rental value of the property from the time that work was commenced on the improvement down to the time when the easements were acquired,—past damages,—and also to recover the damages to the fee. The amount of rents received is not the measure of damages, but the difference in the rental value of the property is, and the actual effect of the improvement upon the property may be shown as bearing upon this question. Besides, under the statute, the lessees, as well as the owners, were entitled to their damages, and they were united in this proceeding by the grade crossing commissioners for the purpose of having the damages of all assessed in one proceeding."

In re Squire, 125 N. Y. 138, 26 N. E. 142, cited by appellants' counsel, does not apply. In that case it was held that under the statute (aqueduct act) authorizing the city of New York to make certain changes in its streets the city was not liable for the temporary inconvenience which was caused to adjacent lot owners by the prosecution of the work and during the course of construction; but in Re Grade Crossing Com'rs of City of Buffalo, 154 N. Y. 550, 49 N. E. 127, we think it was clearly held that under the act in question such damages are recoverable.

In the case of Rumsey v. Railroad Co., 133 N. Y. 79, 30 N. E. 654, 15 L. R. A. 618, it was said:

"The proper measure of damages is the diminished rental or usable value of the property as it was, in consequence of the loss by defendant's acts, in the manner enjoyed by the owner prior to the construction of the work by the defendant."

Hine v. Railroad Co., 129 N. Y. 571, 29 N. E. 69.

Considering the provisions of the charter of the city of Buffalo, the language of the Buffalo grade crossing act, the fact that the improvements authorized to be made were for the benefit of the railroad companies as well as for the city, and that such railroad corporations were chargeable with the payment of one-half of the cost of the improvements, we are satisfied that it was the intention of the legislature to authorize the recovery by a landowner or person interested therein, who sustained damages by the construction of the improvements authorized to be made, to recover the same; those which resulted from doing the work as well as those which resulted permanently to the fee on account of the completion of the improvements.

The form of the commissioners' report in this case, it seems to us, is not objectionable, or at least does not present such error as requires

reversal of the findings of the commissioners. They found that each separate piece of property described in the petition had sustained a certain amount of damage by reason of the improvement. The fact that they found that a certain proportion of such amount was due to what occurred in the construction of the improvement and before the easements were acquired by judicial proceeding, it seems to us is of no consequence. The fact that both items of damage are recoverable, as decided in 17 App. Div. 54, 44 N. Y. Supp. 844, is a perfect answer to the criticism made upon the report by the appellants. While the precise question is not raised by counsel for the appellants upon their briefs, we have examined the evidence to ascertain whether the awards made by the commissioners were excessive, and have reached the conclusion that the awards made were fully justified by the evidence. In addition it may be said the commissioners were reputable citizens of the city of Buffalo. No suggestion is made of improper motives or considerations. The evidence relating to the damages sustained is very full. The commissioners saw the witnesses, and had the advantage of a personal inspection of the property, and we are fully convinced that their award ought not to be disturbed on the ground that it is excessive. The authorities which would prevent such action by this court are numerous. In Re Grade Crossing Com'rs of City of Buffalo, 17 App. Div. 54, 44 N. Y. Supp. 844, Justice Follett says:

"The commissioners appointed to assess the damages were freeholders of the city; were in a position to judge of the value of the testimony of the witnesses; and, in addition, they saw the property, and were presumably selected for their knowledge of the values of real estate, and, it not appearing that they took into account any element not proper to be considered, their award should not be set aside as excessive."

In re Boston Road, 27 Hun, 410; In re Brook Avenue, 8 App. Div. 295, 40 N. Y. Supp. 949.

In the case of Railroad Co. v. Gleason, 42 App. Div. 530, 59 N. Y. Supp. 647, this court said:

"A value determined after a personal inspection by the commissioners, and this information supplemented by evidence of witnesses on the subject, the courts are loath to disturb."

In Daly v. Smith, 18 App. Div. 194, 45 N. Y. Supp. 785, Mr. Justice Cullen said:

"It has been settled by an unbroken line of authority that commissioners of appraisal are to act on their own judgment and information obtained from their view of the real estate, as well as on the evidence produced before them. This was so held in Re Thompson, 121 N. Y. 277, 24 N. E. 472, which arose under the statute of 1883, already referred to. The statute evidently contemplates that, in the case of some claims, no testimony may be given, and the determination of the commissioners be based solely on their own knowledge and information. In Railroad Co. v. Lee, 13 Barb. 169, it was said: 'Unlike a jury, they are restricted to no peculiar species of evidence, or any peculiar sources of information. They may collect information in all ways which a prudent man usually takes to satisfy his own mind concerning matters of the like kind, where his own interests are involved in the inquiry. They may seek light from other minds that they may be the better able to arrive at just conclusions, but at the last they must be governed by their own judgment.' It follows that an award of commissioners cannot be subject to such a review as would obtain in the case of an appeal to an ordinary action."

In case of City of Syracuse v. Stacey, 45 App. Div. 249, 61 N. Y. Supp. 165, it was said:

"In making a conclusion as to the value of a given piece of property, the commissioners shall be guided by their own judgment and experience, rather than by the opinion of witnesses."

But, independent of the broad rules above quoted, we think an examination of the evidence must lead to the conclusion that the awards made were fully justified by the evidence.

The only other question to be considered is that raised by the appellant Margaret Keating. As we have seen, she was a tenant in the premises designated as "Parcel No. 4," under a three-years lease from Catherine Austin, the owner, which lease expired on the 17th day of September, 1897. It appears that the work upon the improvement in question commenced and the street was closed on the 9th day of August, 1897; that she remained in the premises until September 5th, about 10 days before her lease expired, September 17th, and only paid $35 rent for the month of August; nothing for the month of September. We think her claim, if any, is too trivial to justify a reversal of the order confirming the commissioners' report. Besides, she is not made a party to the proceeding, has made no application to be made a party, and therefore has no standing to be heard upon this appeal. Although not a party to the proceeding, she was permitted to testify before the commissioners, and stated, in substance, that she thought the work was commenced June 9, 1897; but the evidence clearly establishes the fact that the work was not commenced until August 9, 1897. She made an offer to show loss of business and profits, which offer was rejected by the commissioners. It would be a travesty upon justice to reverse the order of confirmation, which determines and settles the important rights of so many parties on account of any claim which the appellant Margaret Keating may have, especially when she is not a party to the proceeding, and up to this time has made no application to be made such party. The conclusion is reached that the order of confirmation appealed from should be affirmed, with costs to be taxed in favor of the respondents and against the appellants except Margaret Keating.

Order affirmed, with costs to be taxed in favor of the respondents and against the appellants, except Margaret Keating. All concur, except LAUGHLIN, J., not voting.