(57 Misc. Rep. 81.)

### HOY et al. v. VILLAGE OF SALAMANCA et al.

(Supreme Court, Special Term, Cattaraugus County. October 18, 1907.)

**1. MUNICIPAL CORPORATIONS—CHANGE OF STREET GRADE — DAMAGES — REMEDIES.**

Laws 1883, p. 100, c. 113, providing that where the grade of a street is changed, so as to interfere with any building or the use thereof or to damage the real property, the owner may apply for the appointment of commissioners to ascertain the damage, creates a right to compensation, which does not exist independent of it, and is exclusive of any other remedy, either on the theory of trespass or otherwise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 989, 990.]

**2. SAME—RENTAL DAMAGES.**

Rental damages to an owner abutting on a street, the grade of which was changed, for the time required for doing the work and to the report of the commissioners to assess damages, based on a diversion of travel and traffic, but which change was accomplished without a closing of the street or interference with the right of access to abutting property, are not within Laws 1883, p. 100, c. 113, providing that where the grade of a street is changed, so as to interfere with any building or the use thereof or to injure or damage the real property, the owner may apply for the appointment of commissioners to ascertain the damage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 942, 943.]

---

Proceedings in the matter of the claim of Dora Hoy and others against the village of Salamanca and the Erie Railroad Company for damages from the change of grade of Main street. Report of commissioners as to damages confirmed in part, and disapproved in part.

Frank H. Callan, for claimants.
Thomas L. Newton, for village of Salamanca.
Thomas H. Dowd, for Erie R. Co.

MARCUS, J. The commissioners report:

"That said permanent change of grade in front of said premises is, and since September 1, 1901, has been, a continuous trespass upon the easement of access to claimants of said premises, and solely in consequence of said trespass, and aside from any other causes, the rental or useful value of said premises was depreciated from said date to the date hereof (July 1, 1907) in the sum of [stating] below what said rental value would have been during said period if there had been no change in the grade of said street," etc.

Charles Johns testified:

That the work was begun in the undergrade, but not in front of his property, on Labor Day in September, 1901, and was completed in September, 1902. "Q. So that there was no time when trade was suspended, or cut off, between the north and south side of the tracks, on account of the work in the undergrade crossing? A. No; not until after the work was done. Q. And then, when travel was turned under the subway, then it was— A. I want to modify my answer. There was a short time when it was suspended, when the detour was made in the sewer. The piles were driven through the sewer, and the contractors had to make a detour, and run the sewer easterly. Q. How long was that? A. Perhaps a week or ten days. Q. With that exception it was kept open all the time? A. Yes."

It appears that only the westerly half of Main street was changed as to grade, so there was left a pavement of about 22 feet in front of the claimants' premises. It is too clear for discussion or argument that damages cannot be assessed on the theory of a trespass, or a continuing trespass, since the work or improvement was lawful, and no action at law or in equity for damages or compensation could have been maintained by the abutting owners independent of the statute. The right to compensation is created by statute, and the statutory remedy is exclusive. Melenbacker v. Salamanca, 188 N. Y. 377, 80 N. E. 1090. The Elevated Railroad Cases are entirely different, and have no application, for the reason that the abutting owners had a common-law right to damages resulting from the trespass or wrongful act of the railroads. Here the right to compensation is entirely dependent upon the provisions of the statute, and the measure or extent of the right is to be determined by the particular terms in which it is expressed. Heiser v. Mayor, etc., of N. Y., 104 N. Y. 68, 9 N. E. 866. And the statute will not be enlarged or extended beyond the scope of the words or language employed; for instance, where the statute specifies "the owners of buildings," the owner is not entitled to compensation in respect to injury to his lands. People ex rel. Heiser v. Gilon, 76 Hun, 346, 27 N. Y. Supp. 704, affirmed on opinion below 148 N. Y. 763, 43 N. E. 989; Matter of Ersham, 37 App. Div. 272, 55 N. Y. Supp. 942.

In the Matter of Squire, 125 N. Y. 131, 26 N. E. 142, the court said:

"The remedy sought in this proceeding is purely statutory, and the only question is whether the injury which the claimant suffered is within the statute, and one for which the commissioners were authorized to award compensation. We are of opinion that the language of the eleventh section, authorizing damages to the owner of lands which may be affected by the

107 N.Y.S.—14

construction and maintenance of the acqueduct and its appurtenances, applies only to permanent injuries to the land from the completed works and their use thereafter. It may be supposed that the Legislature understood that the construction of the acqueduct would injuriously affect the rights appurtenant to contiguous lands, and that the structures which were to form a part of the acqueduct system might interfere with the enjoyment or impair the value of such contiguous lands, and that for consequential injuries merely, sustained in consequence of the construction and maintenance of public works under legislative authority, the parties would not, under the general rules of law, have any redress. It was, we think, to meet this class of cases that the provision in question was made. It would require very clear language to impose a liability upon the city for damages for the temporary inconvenience which would be occasioned to adjacent lot owners from the prosecution of the work and during the course of construction."

It was held, therefore, that the owner of a house on an adjoining lot, although seriously incommoded by the noise, soot, smoke, and dust, was not entitled to damages. The court refers to a case arising under the English statute authorizing compensation in respect of any lands "which shall have been injuriously affected by the execution of the works," and in which it was held that plaintiff was not entitled to compensation for temporary obstruction of the highway during the construction of defendant's railway, which prevented free passage of persons and resort to the plaintiff's inn. Lord Chelmmsford said that the words applied, not to temporary, but to permanent, works of companies; that "the injury must be an actual injury to the land itself, as by lowering the foundation of the building on it, or obstructing its light or its drains, making it inaccessible by lowering or raising the ground, or by some such physical obstruction."

In Bishop v. North Adams, 167 Mass. 370, 45 N. E. 928, the court said:

"The statement in the bill of exceptions that the excavations made in laying pipe rendered it impossible to drive on her land relates, we presume, to a temporary interruption of travel which would not entitle her to relief"—citing Matter of Squire, supra.

The decision in the Squire Case is, however, distinguished in Matter of Grade Crossing, 52 App. Div. 32, 64 N. Y. Supp. 769.

The proceedings in question were instituted under and by virtue of chapter 113, p. 100, Laws of 1883, which provides that, whenever the grade is changed or altered so as to interfere in any manner with any building or the use thereof, or shall injure or damage the real property, the owner may apply for the appointment of commissioners to ascertain the damage sustained thereby. The village law (Laws 1897, p. 421, c. 414, § 159) provides that, if the change of grade shall injuriously affect any building or land or the use thereof, the change of grade to the extent of the damage resulting therefrom shall be deemed the taking of such property for a public use. Though this provision is not applicable to this proceeding instituted by abutting owners (Torge v. Salamanca, 176 N. Y. 324, 68 N. E. 626; Melenbacker v. Salamanca, 188 N. Y. 370, 80 N. E. 1090), it may properly be referred to. Now, it appears from the record in these proceedings that there has been no interference in any manner with the buildings or the use of them during the progress of the work or improvement. Nor was the right of access to the premises interfered with,

or the street closed or obstructed so as to hinder or prevent travel or traffic. The award of rental damages appears to be based solely upon an alleged diversion of travel and traffic. But the statute does not warrant the allowance of compensation upon that ground, either upon the "erroneous principle" of trespass or otherwise. "Whenever the grade is changed or altered, so as to injure or damage the real property," the statute allows compensation as for a permanent injury or damage in respect of depreciation in value of the property. But here there was no injury or damage to the realty during the progress of the work, upon which an award as for past damages could properly be based.

It will be observed that the commissioners have awarded past damages, not only during the period of time required for doing the work, but also from the time the improvement had been completed down to the date of their report; and all this upon the principle that the village was chargeable as for a continuing trespass. Clearly, after the work has been completed, past damages cannot be allowed upon any principle; and, in the present case, the award of past damages was wholly unwarranted by the statute. The cases decided under the Buffalo grade crossing act are not applicable. Certainly they are not decisive. That act is not the same in terms as the act of 1883. In 52 App. Div. 28, 64 N. Y. Supp. 769, the court emphasizes the language of the act, "and the amount to be paid in carrying out the proposed plan," and lessees, as well as owners, were entitled to compensation. In that case the commissioners awarded past damages accruing between the commencement of the construction of the approaches to the viaduct in Seneca and other streets and the reopening of said streets for traffic. The commissioners were appointed August 1, 1898, and filed their report in July, 1899. It appears that the work upon the improvement in question was commenced and the street closed on the 9th day of August, 1897. In Re Grade Crossing Com'rs, 17 App. Div. 54, 44 N. Y. Supp. 844, the property affected was the Continental Hotel, situated upon the corner of Exchange and Michigan streets. Improvement was begun in May, 1895, when Michigan street was closed, and completed in March, 1896. The commissioners were appointed in June and made their report in September, 1896. In the present case, as we have said, there was no closing of the street, nor any interference with the right of access.

It necessarily follows that the report of the commissioners should be confirmed in so far as the award of fee damages is concerned, and be disapproved in respect to the award of past or rental damages.